SUPREME COURT Cayuga General Term, June, 1854. *Welles,*
*Selden* and *Johnson,* Justices.

THOMAS J. REED, pl'ff in error *vs.* THE PEOPLE def'ts in error.

Two distinct offences, requiring different punishments, can not be alleged in
the same count of an indictment: such an indictment is bad for duplicity
and a conviction upon it will be reversed on error.

Where, in the same count of an indictment, the defendant was charged with a
common law nuisance and also with a violation of a regulation of a board of
health, under the fourth section of the " act for the preservation of the pub-
lic health," passed April 10, 1850, the count was adjudged to be double, the
former offence being punishable by fine not exceeding $250, or imprisonment
not exceeding one year, or both, (2 *R. S.* 697, §§ 40, 41,) and the latter being
punishable by fine not exceeding $1000 or imprisonment not exceeding two
years, or both. *Sess. Laws of* 1850, p. 692, *Sec.* 4.)

What allegations in an indictment are sufficient to charge a common law
nuisance considered.

It is only where a regulation of a board of health has been made and *published,*
that a person can be convicted, under the 4th section of the act, of a mis-
demeanor, for its violation.

An order of a board of health made *ex parte* and adjudging certain premises
to be a common nuisance and directing the cleansing and purification of the
same, within three days after the service of notice of such order, is not such
a regulation as is contemplated by the fourth section of the statute, and a
failure to comply with such order does not subject the person offending to
punishment for a misdemeanor, under the section aforesaid.

On the trial of an indictment for the violation of such an order, it is not com-
petent for the prosecution to prove affirmative offensive acts on the part of
the defendant, while engaged in removing the cause of the nuisance. But it
is competent for the defendant on such trial, to show a *bona fide* attempt on
his part, to obey the order in question.

On such trial, it is a defence to such indictment to prove that at the time of
the making and service of the order, the defendant resided out of the bounds
of the village corporation, in which such board of health was organized.

Writ of error to the Court of Sessions of Orleans county
The plaintiff in error was indicted at the Court of Oyer and
Terminer held in said county in the month of September, 1852,
for disobeying an order of the board of health of the village of
Albion in said county of Orleans. The indictment was sent to
the Court of Sessions for trial, where the defendant was tried

and convicted in the month of April, 1854, and adjudged to pay a fine of $800, and stand committed until the fine was paid·

The indictment contained two counts, the first of which stated that on the 5th day of June, 1853, " the village of Albion, being an incorporated village, under and by virtue of the laws of the state of New York, the trustees of said village in pursuance of an act of said state, entitled ' an act for the preservation of the public health,' passed April 10, 1850, appointed one Nelson A. Graves, Rice Warner, and John Hubbard to be and constitute a board of health in and for said village (the then ensuing year) and a competent physician to be the health officer thereof. That at the time aforesaid, and for a long time previous, one Thomas J. Reed was the owner and occupant of certain premises situated on the east side of Batavia street in said village and in said county of Orleans; that upon said premises so owned and occupied by the said Reed, then and for a long time previous had been and still are ditches drains and low places, filled with standing, stagnant, filthy and unwholsome water; large quantities of animal and vegetable substances decaying; pig pens and barns containing and surrounded by manure, mud and filth; and a privy with the vault thereof full of manure, human deposits and filth; and the building part of said privy containing divers quantities of manure and filthy excrements; all of which were suffered and permitted to be and remain upon the said premises by Thomas J. Reed, he having full knowledge of the situation thereof, and well knowing that from said causes an offensive and noisome smell arose and made the air unwholesome and dangerous to the public health. That on the seventh day of July, 1852, the said premises being as aforesaid, the said several persons, so appointed as a board of health, in and for the said village, and having duly qualified and become charged with the duties and vested with all the powers of boards of health, created and appointed under and by virtue of said statute, did meet together; and having examined and deliberated upon said premises so owned and occupied by the said Thomas J. Reed, as aforesaid made the order and adjudication upon and concerning the said premises, as follows,

that is to say: ' July 7th, 1852, Albion, Orleans co., N. Y., Board of health of the village of Albion, met at the office of Curtis and Graves, in the court house in said village. Present John Hubbard, Rice Warner and N. A. Graves.

Rice Warner, President.

N. A. Graves, Sec'ry.'

' It is adjudged by said board of health, after examination, that the premises of Thomas J. Reed on which his store is situated in said village is a common and public nuisance, and dangerous to the health and lives of the inhabitants of said village, and that the same ought to be abated. Therefore it is enacted that the filthy or stagnant water, animal or vegetable substance, in and about the drains, ditches or low places on said premises, and also the manure, fetid matter and filth on the north and east sides of the barn on said premises be removed, covered up or otherwise disposed of; and also that the pig pens be removed from said premises, and also that the manure be removed from the privy on said premises, said privy cleansed, the old vault with its contents covered up, a new vault dug therefor, and the said privy placed thereon, and a sufficient quantity of unslacked or chloride of lime be strewed upon all such places to cleanse and purify the same, and keep them in such condition. And it is further ordered that a copy of the aforesaid regulations adopted by the same board, together with a notice or order requiring said Thomas J. Reed to abate or remove said nuisance as specified in the foregoing enactments be served on said Reed, and that he have three days after service of said notice to abate or remove said nuisance. July 7, 1852.

N. A. Graves,

Rice Warner,

John Hubbard,

Board of Health of the Village of Albion,

Orleans County.

N. A. Graves, Secretary.'

As by the record of said order and adjudication will more fully appear. That afterwards, to wit: on the tenth day of July, 1852, at the said village of Albion, the said board of health caused a copy of the aforesaid regulations adopted by said board, together with a notice or order requiring the said Thomas J. Reed to remove or abate said nuisance as specified in the aforesaid enactment to be personally served upon said Reed; that the said Thomas J. Reed having knowledge of the aforesaid order and regulations of the said board of health, it became and was the duty of the said Reed within three days after said notice and knowledge to remove the said filth and fœtid matter found about said barn; to remove the said pig pen from said premises; to remove or cover up said standing and stagnant water, and cover the said places with lime, as required by said order, and to take away or cover up the said animal and vegetable substance, being and decaying thereon as aforesaid; and also to remove the manure from the said privy, and to cleanse the said privy, and to cover up the old vault to said privy with its contents, and to dig a new vault for the same, and to place the said privy thereon. But the said Thomas J. Reed, well knowing the premises, and willfully and maliciously intending to violate the said order and regulation of the said board of health, did not nor would within three days after said notice, nor at any other time remove the said filth and fetid matter from about the sides of said barn, nor the pig pen from said premises, nor the said standing and stagnant water, nor did he sprinkle lime on said places, nor cover up or otherwise dispose of the same, nor did he remove, cover up or otherwise dispose of said animal and vegetable substances, nor did he remove the manure from said privy or cleanse said privy, nor cover up the old vault to said privy, and the said contents thereof, or dig a new vault or place said privy thereon, but to do the same or any part of the said several things and matters as required by said order and notice, willfully and maliciously wholly neglected and refused so to do: and afterwards to wit, on the 10th day of August, 1852, the said Thomas J. Reed, having full knowledge of the said order so made by the said

board of health, and full knowledge of the premises as afore-said, then and there willfully and maliciously took a large quantity of the filth, excrements and contents from said old vault to said privy, and scattering the same upon the ground in and about said privy on said premises; willfully and maliciously took divers other quantities of the same into Batavia street in said village and thence in a southerly direc-tion to State street, knowingly and willfully scattering the same along said Batavia street to said State street, and from thence east along said State street, scattering the same along the said street in divers large quantities, willfully and maliciously intending thereby to make and create a noisome and direful stench, offensive and dangerous to all the good people; and the said Thomas J. Reed did thereby make and create a noisome, offensive and direful stench, by means whereof and of the said premises, divers persons became and were grievously sick and distempered in their bodies, and in great danger of losing their lives, to the great damage of the said persons, against the peace of the people of the state of New York and their dignity.

There was another count in the indictment, but as the de-fendant was convicted on the first only, it is not necessary to notice the second.

At the trial, after the jury were empanneled, and before any evidence was given, the defendants' counsel moved the court to quash the indictment on various grounds, which motion was denied.

The counsel for the people then gave evidence of the ap-pointment and organization of the board of health, the making of the order and adjudication set forth in the first count, as above, also evidence tending to show that a copy of said order was a few days afterwards sent to the defendant, and that the same came to his hands. That at the time of making said or-der and of the service thereof upon the defendant, he resided upon his farm about a mile and a half from the said village of Albion. Also, that the defendant had failed to comply with its requirements for more than three days after the service of

the copy of said order upon him. In the course of the trial a witness for the people was asked by the counsel for the prosecution the following question: "Do you know any thing about the defendant's taking the contents of the privy and scattering them about the premises and the street on or about the 10th of August, 1852?" to which the defendant's counsel objected on the ground of irrelevancy and immateriality. Also, that if the defendant created a nuisance subsequent to the order he was liable to another indictment therefor, but was not liable under this. The court overruled the objection and the defendant's counsel excepted. The bill of exceptions then continues as follows: "Witness answered that on the 11th of August last, about 8 o'clock P. M., he saw the said back house tipped up and the defendant standing on the edge of the vault with a pail in his hands in the attitude of dipping the contents of the vault into a wagon standing there; saw some of the contents scattered around near where the wagon stood Question by counsel for the people: Did you see it scattered along the streets? to which the defendant's counsel objected on the same grounds. The court overruled the objection and the counsel for the defendant then and there excepted. Witness answered that he saw some of the same material in front of defendant's premises in Batavia street, two feet square where the wagon moved through the ditch. Q. Did you observe any stench from the contents on the ground and in the street? To which the defendant's counsel objected on the same grounds. The court overruled the objection and the counsel for the defendant then and there excepted, and the witness answered that he did, very bad.

*Norton Z. Sheldon* being called and sworn as a witness for the people, testified that he resided in Albion and remembered the circumstance of defendant's removing the contents of the privy. The defendant's counsel thereupon objected to the prosecutor showing any matter tending to prove a nuisance created by defendant in the streets of Albion subsequent to the order of the board. The court overruled the objection and the counsel for the defendant then and there excepted. The bill of exceptions then states that this and several other witnesses gave

evidence tending to show that after the date of the said order, the contents of the said privy had been scattered through and along the streets of the village, producing an offensive smell and causing sickness to some of the inhabitants.

After the prosecution had rested, the defendant introduced evidenee tending to show, among other things, that the premises in question were occupied by his tenants, at, before and after the making the order, and that the nuisance was created and maintained by them. That the defendant removed from a portion of said premises on or about the 17th day of June, 1852, with his family to his farm a mile and a half off from the corporation of the village of Albion, where he has since resided.

A witness sworn on the part of the defendant, testified that he lived in one of the small houses on the premises in question, in Albion, in the year 1852.

Question by the defendant's counsel: What direction, if any, did the defendant give you about cleaning up the premises in question in July and August last? To which the counsel for the people objected. The court sustained the objection, and the defenda t's eounsel then and there excepted.

Question by the defendant's counsel: Did the defendant give you any directions about cleaning up the premises in those months? Objection and decision as above, and defendant's counsel excepted.

After the evidence was closed the court charged the jury, among other things, that the defendant was not directly indicted for taking the contents out of the privy, and thereby making a nuisance, and could not be convicted for that alone; but the evidence upon that subject was proper to be considered by them on the question whether he violated the order of the 7th of July, and whether he did it willfully and perhaps as matter of aggravation for the court to consider.

The defendant's counsel requested the court to charge the jury as follows:

I. That if they should find under the evidence that the nuisance was created and maintained by other persons, and not the

defendant, at the time charged in the indictment, notwith-standing the board of health ordered him to remove it, they must find the defendant not guilty. The court refused so to charge, but then and there charged the jury in that behalf, that if they should find that other persons than the defendant con-tinued the nuisance after the order of the board of health with-out the fault of the defendant, they should find the defendant not guilty, to which charge and refusal to charge the defend-ant's counsel then and there excepted.

II. That if the jury should find that the defendant at the time of making and serving the order, resided out of the corporation of the village of Albion, and that the notice or order was served on him out of said corporation, they should acquit the defend-ant. The court refused so to charge, but then and there charged the jury, that if they should find that the defendant at the time the order was made resided out of the village, and continued to reside out of said village, and had no control of said premises, they should acquit him; to which refusal and charge, the de-fendant's counsel then and there excepted.

The jury convicted the defendant under the first count of the said indictment, (the court charging them that no evidence had been given under the last count, and that said last count was excluded from their consideration.)

Various other questions arose in the course of the trial, and various other exceptions by the defendant's counsel were taken to rulings of the court, but they are deemed unnecessary to be here stated.

*H. D. Tucker*, for the plaintiff in error.

*W. K. McAlister*, for defendants in error.    •

*By the Court,* WELLES, J.—The judgment of the court below must be reversed, for the following reasons:

I. The indictment is bad for duplicity; it charges the de-fendant with two distinct offences—one, a common law nuis-ance punishable by fine not exceeding $250, or imprisonment

Reed v. The People.

not exceeding one year, or both such fine and imprisonment. (2 R. S. 4 ed. 88, §§ 55, 56; 1 ed. 2 vol. 697, §§ 40, 41.) The other, for violating the order of the board of health, involving punishment by fine not exceeding $1000, or imprisonment not exceeding two years, or both. (1 R. S. 4 ed. 853, § 15; Sess. L. of 1850, ch. 324, § 4.)

This objection is not aided by the verdict, nor the defect cured by the statute of jeofails. (The People v. Wright, 9 Wend. R. 196, and authorities there cited.)

It was contended on the argument by the counsel for the people, that, in truth, the count in question was not double; that all it says about the conduct of the defendant after the order of the board of health was made, in scattering the filth, &c., does not amount to a nuisance, because not alleged to have been " to the common nuisance of all the good people," &c., and may be treated as surplusage. The affirmative acts of the defendant are charged to have been done willfully, with intention to make and create a noisome and direful stench, offensive and dangerous to all the good people, and that the defendant did thereby make and create a noisome, offensive and direful stench; by means whereof and of the premises, divers persons became and were grievously sick, &c. The allegations contain the essential elements of a nuisance, and all that is wanting is the name. It is not necessary to decide whether this omission would be a fatal objection to the count, as for a nuisance, for, in the view in which we are considering the question, it does not lie with the people to raise it. If it were not so, it would follow, that if that part of the count charging a violation of the order of the board of health, was also defective in any respect, or, if the public prosecutor should attempt to set out two distinct offences in one count, which could not legally be joined, and neither was sufficiently stated, by the same rule, the objection of duplicity could not be made in either case. But a more substantial answer is, that in a case where one of the two offences is well, and the other, defectively stated, and a general conviction on the count, where the evidence would well warrant the verdict in respect to the lesser crime, but in regard to

the other, the court, at the trial, would have been justified in directing an acquittal, the party accused would be liable to be punished for an offence of which, but for the improper joinder, he would have been acquitted.

II. That portion of the count upon which the defendant was convicted, which charges a violation of the order of the board of health, and upon which the court below rendered judgment is clearly bad. The third section of the " act for the preservation of the public health," (*Sess. L. of* 1850, *ch.* 324,) prescribes the powers and duties of the several boards of health organized at the time of the passage of the act, in any city or village in the state, and of those constituted under the act. By subdivision three of that section, they are " to make regulations in their discretion concerning the place and mode of quarantine, the examination and purification of vessels, boats and other craft not under quarantine; the treatment of articles or persons thereof, the regulation of intercourse with infected *places*, the apprehension, separation and treatment of emigrants and other persons, who shall have been exposed to any infectious or contagious disease; the suppression and removal of nuisances, and all such other regulations as they shall, think necessary and proper for the preservation of the public health. The sixth subdivision makes it their duty " to publish from time to time all such regulations as they shall have made in such manner as to secure early and full publicity thereto." The fourth section of the act is in the following words: " Every person who shall willfully violate any regulation, *so made and published*, by any such board of health, shall be deemed guilty of a misdemeanor, and on conviction thereof, shall be subject to fine and imprisonment, or both, in the discretion of the court, such fine not to exceed one thousand dollars, nor such imprisonment two years."

The order set forth in the first count of the indictment was not such a regulation, within the meaning of the act, as to make the disobedience of it by the defendant a misdemeanor. It was an *ex parte* adjudication or sentence in regard to a particular locality, and requiring of the defendant the performance

of a series of acts. The board of health probably had the power to adjudge and declare the premises a nuisance, and to procure it to be abated. The eighth subdivision of the fourth section gives them all needful facilities for so doing, and the fifth section of the act makes the county chargeable for all expenses except that of the compensation to the members of the board, which latter are chargeable upon the city or town. The *regulations* which the boards of health have power to make, so as to attach to the violation of them the penalties provided in the fourth section, are to be in the nature of bylaws; they are to be *prescribed* and published, and are to affect, generally, all persons within the scope of their operation. The term is to be understood in contradistinction to a judgment, sentence, decree or order, and contemplates the exercise of a power, in its character legislative rather than judicial. The requirement to publish them in such manner as to secure early and full reciprocity, shows clearly that they are of this character. The violation must not only have been willful, but committed after the regulations have been published in the manner directed. No reason can be assigned for giving early and full publicity to an order such as the one made by the board of health in this case; no one's conduct or action was to be affected by it, but that of the defendant. A notice was all that could be useful to him, and so the board regarded it; they directed personal notice to be served upon him after it was made, but did not order it published. It is impossible, we think, that the legislature could have intended to confer upon these boards of health the power to make an adjudication against an individual, pregnant with such serious consequences as are claimed in the present case, without notice and in his absence, consequences involving, it may be, not only a heavy pecuniary penalty, but that of perpetual infamy.

But assuming the order in question to have been a regulation, within the meaning of the act, a violation of it is not declared to be a misdemeanor unless committed after it has been published. There is no allegation that it was ever published. This was a condition precedent, and there being no averment

of its having been complied with by the board, is a fatal objection to the indictment. Serving personal notice on the defendant, was not giving early and full publicity to it, and until it shall be so published no misdemeanor can be predicated of its disobedience.

III. There were several errors committed by the court below upon the trial.

1. The evidence tending to show that the defendant had been guilty of creating a nuisance by scattering the contents of the privy through the streets of the village of Albion, was improperly admitted, for the purpose of proving a violation of the order of the board of health. It did not tend to establish his guilt upon the charge of violating the order, which was manifestly the only offence of which the public prosecutor was seeking to convict the defendant. It was so stated by the court in his charge to the jury. The disobedience complained of was the omission by the defendant to perform certain affirmative acts enjoined by the order. The evidence in question could have no tendency to establish that charge, and its effect could be only to embarrass the jury, and create a prejudice against the defendant. If it was admissible for the purpose of convicting the defendant of a common law nuisance—which is dis claimed on the part of the people—it only fortifies the objection to the indictment, of duplicity. If the evidence had been received simply to bear on the question whether the order had been willfully violated, and had been confined to that object, perhaps it would have been unobjectionable. But the judge instructed the jury that it was proper to be considered by them upon the question whether the defendant had violated the order of the seventh of July. This we think was clearly erroneous.

2. The defendant offered evidence tending to show that in the months of July and August (1852) he gave directions in relation to cleaning up the premises in question. This was objected to on the part of the people and excluded by the court. We think, under the circumstances, it should have been admitted. No ground of objection is stated in the bill of excep-

Reed *v.* The People.

tions, and no specific object avowed in the offer. We can see, however, a point of view in which it might have been proper, especially if it had been followed up with other evidence, which the defendant was virtually prevented by the court from doing. It was competent, we think, for the defendant to prove a bona fide attempt on his part to obey the order of the board of health, and although such attempt might have fallen short of a full compliance, yet it would have been competent on the question whether the failure was willful.

3. There was evidence given tending to show that the defendant removed from the village of Albion about the 17th of June, 1852, with his family, to his farm a mile and a half off from the corporation of the village of Albion, where he had since resided. The court was requested to charge the jury that if they should find that the defendant, at the time of the making and serving the order, resided out of the corporation of the village of Albion, and that the notice or order was served on him out of said corporation, they should acquit the defendant. The court refused so to charge, but charged that if they should find that the defendant, at the time the order was made, resided out of said village, and continued to reside out of said village, and had no control of said premises, they should acquit him. We think the defendant was entitled to have the jury instructed as requested, without the condition or qualification imposed by the court.

This point involves the question whether a municipal corporation has power, through any of its agents or subordinates, to bind by its bylaws or regulations persons not members of the body, or residents of the locality embraced by the geographical boundaries of the corporation. I entertain no doubt that persons, residing out of such corporate bounds, may render themselves obnoxious to the bylaws and regulations of the corporation by coming within, and while there violating them. But I deny the right of such a corporation to make bylaws or regulations, binding personally upon an individual not residing within its geographical bounds, and who has done no act within them after the making of the bylaw. It is not important to deter-

mine whether this board of health was a corporation; it clearly could possess no more extensive jurisdiction in regard to per sons or territorial limits, than the corporation of the village of Albion, by whose action it was brought into existence. It should be borne in mind that the charge against the defendant in this case was, not that he had done anything, but that he had omitted to perform certain things which the order required of him. Whatever his liability in reference to this order might have been, in case he had been a resident of the village of Albion, and therefore a member of the corporation, at the time the order was made, if he was not such a resident at that time, he was not amenable to its authority, or liable to obey its injunctions. The court below made his liability to depend upon the questions, whether he continued to reside out of the village and whether he had the control of the premises. According to this holding, a man residing in the city of New York, owning premises in the village of Albion, of which he had the control, might be sent to the state prison for the acts of third persons, done without his permission or knowledge, or for omitting to perform any act in reference to such sanitary regulations as the board of health might see fit to require of him. Such a doctrine would be intolerable; and I am not willing to concede to any municipal corporation, or any body of their creation, a power so fraught with danger to the rights of individuals without the express requirement of the legislative authority. The qualification of the charge in relation to the defendant's control of the premises, was unwarranted, assuming the order to have been a valid regulation within the meaning of the act, inasmuch as the offence charged and for which the conviction was had, did not consist of any affirmative act done by the defendant within the bounds of the corporation after the making and publication of the regulation he was charged with violating.

Judgment reversed